BOYCE vs. PAPIN.

A party having no title cannot question the correctness of the location of a confirmation made by a U. S. Surveyor under the act of 1824.

ERROR to St. Louis Court of Common Pleas.

H. S. GEYER, *for Plaintiff in error, insists :*

1. The confirmations or grants by the commissioners to Papin, under Hervieux, and to Gratiot, under Routier, having been made on the 14th December, 1811, take precedence of the confirmation to the plaintiff or those under whom he claims by or under the act of 13th June, 1812.— Therefore, if there is found any interference between either of the grants by the commissioners, and that under which the plaintiff claims, the former will prevail, although the possession of Chancellier is anterior to either of the original grants of the other lots.  2 Story's Laws U. S., 1257; Strother vs. Lucas, 12 Peters.  Nor will such interference authorize a location of plaintiff's confirmation elsewhere.

2. The title of all the grantees depends upon their respective grants or confirmations, and not upon the discretion of the Surveyor General.  When a grant is made, the title passes from the United States, and is beyond the control of the United States and their officers.  The extent and location of the grant is a judicial question depending upon the terms of the grant, or, if they are ambiguous or equivocal, upon facts judicially ascertained.  Neither the Surveyor General nor any ministerial or executive officer of the United States is competent definitively to construe a grant or to determine any fact upon which a title depends.

3. Although it has been held and may be conceded, that a survey by the Surveyor General under a confirmation is prima facie evidence of the true location, extent and boundaries of the land confirmed, yet the Court of Common Pleas erred in deciding in this case that such survey is absolutely conclusive.  The entire block 89, east of the common fields, had been granted by the United States, by the several acts of the commissioner and recorder given in evidence, or if there was a lot or part of a lot vacant, it was granted beyond the power and control of the United States and its officers, by the act of 13th June, 1812, (2 Story's U. S. Laws, 1257) and the act of 27th June, 1831, (ib., vol. 4, 2220) to the inhabitants of St. Louis for the use of schools.  The United States, therefore, had no land within the block for the Surveyor General to exercise his discretion upon; at all events, it was competent for the defendant to establish these facts; and to that end, the true location of the several grants was necessarily involved, not to be decided by the Surveyor General, but by the court upon evidence.

4. Assuming that the plaintiff acquires his title under the act of 29th April, 1816, confirming the report of the recorder of land titles, McNair's title under Chauvin is acquired under the same

act; the grants, as derived from the United States, are simultaneous for lots adjoining each other—the south boundary of the first being the north boundary of the other; the true location of that division line is the subject of controversy, which can be decided only by a judicial interpretation of the grant upon an inquiry into the facts, and the decision of that question the United States have not, and could not, if they would, commit to the Surveyor General.

5. The barn lot claimed by the plaintiff under Chouteau, appears by the evidence to have been possessed by Chancillier prior to the 6th August, 1773, and by his widow and those claiming under her from Chancillier's death down to and after the 20th December, 1803, and was confirmed according to possession by the act of 13th June, 1812. 2 Story's U. S. Laws, 1257. The subsequent action of the recorder and Congress is inoperative for any purpose other than the ascertainment of boundaries; a grant by either to another person would be void, and neither could change the location. The grant by the recorder, confirmed by the act of 1816, could do, and does nothing more, than was already done by the act of 13th June, 1812, unless it be held that the documents exhibited with the claim ascertain the boundaries; in which case, the court below erred in deciding that the deeds under which plaintiff claimed before the recorder, are not to be taken as part of the description of the lot confirmed.

6. The grant of the recorder, confirmed by the act of 1816, is of a claim to a lot by virtue of possession prior to 20th December, 1803, according to the possession of Chouteau, and unless the deeds under which the claim was made are to be taken as part of the confirmation, the boundaries and extent of the lot granted are not ascertained, and it became the duty of the claimant, under the act of 26th May, 1824, to designate his lot by proving before the recorder of land titles the fact of inhabitation, cultivation, or possession, and the boundaries and extent of the claim.—Congress, then, if it had power to commit the ascertainment of boundaries to any of its officers, has not committed the subject to the discretion of the Surveyor, but charged another officer with that duty—commanding the Surveyor to survey according to the boundaries ascertained by the recorder, and not according to his discretion, as the court below understands.

7. The survey of the grant under which the plaintiff claims, as given in evidence, was not authorized by any law, because whatever may have been the authority of the Surveyor in respect to other lands, or in respect to village lots, prior to the 26th May, 1824, his authority over lots in the villages named in the act of that date in ascertaining boundaries independent of the recorder, his authority afterwards depended upon the previous ascertainment of boundaries and extent by the recorder, and therefore his survey, if evidence at all, is not conclusive in any case.

8. If the surveyor had authority to survey the lot claimed by the plaintiff, his power and his duty extended only to the survey of the lot confirmed—not to transfer it to another place. The lot confirmed was that on which Chancillier's barn stood, and of which Chouteau was possessed under him; the confirmation by the act of 1812, and also that of 1816, is for that lot and no other; neither of them grants a lot to be located at the discretion of the Surveyor on any part of block No. 89, as the Surveyor and the court below supposed.

9. The testimony offered by the defendant and rejected by the court ought to have been admitted. It was the record of the Recorder of land titles, under the act of 26th May, 1824, duly certified, and shows that the representatives of Chancillier did attempt to designate their lot as being in square No. 89, containing 60 feet front by 150 in depth, bounded north by a lot of Jas. Papin, east by Third street, west by Lucas, and south by Cabanne; and that Genevieve Rotier's legal representatives also attempted to designate their lot on block 89, bounded east by Third street, north by a cross street separating it from the barn lot of Gabriel Cerre, west by the front line of the common field, south by the barn lot formerly owned by Pierre Chouteau, sen. This evidence ought to have been admitted, if for no other purpose than as it tended to prove that down to 1825 the claimants under Rotier held the northern lot, (A) and those under Chancellier the next adjoining on the south, (B) under their respective confirmations. The evidence taken was so taken and recorded under the authority of law, and proves the location of the lots as designated by the claimants. That of P. Chouteau, the plaintiff's grantee, was material and pertinent in showing the location of the lot claimed under Rotier, and the whole testimony is pertinent to show the ex-

tent and boundaries of the lots authoritatively ascertained under the act of 26th May, 1824, by which the survey was to be governed.

10. The surveys given in evidence by the plaintiff do not appear to have been examined or approved by the Surveyor General; the first is certified to be a plat and description of survey No. 350 of St Louis lands, in the name of Peter Papin, &c., *"correctly copied* from the plat and description thereof on file ln this office, as returned by Jos. C. Brown, under his contract of 15th September, 1835;" and the certificate to the second is in these words: "The above plat and description of survey No. 351 of St. Louis lots, is correctly copied from page 371 of the book of field notes and surveys in St. Louis, Mo., in this office." Both are returns by a deputy scrveyor, without examination or approval by the principal, and therefore of no authority, much less conclusive.

11. The testimony in the record not only tends to show, but establishes beyond any reasonable doubt, that the true location of the lot confirmed to the plaintiff is north of the lot in controversy. The grant to Henvieux was made in 1773, of a lot between Chancellier and Calvet. The proof shows conclusively that the barn of Chancellier was about 80 feet south of Vine street, on the lot (B), and the barn of Hervieux north of that. The grant to Rotier is dated in 1789, when Chouteau was in possession of Chancellier's lot, and grants a lot sixty feet front, bounded on one side by Cerre and on the other by Chouteau; it is so described in the grant and in all the documents, and the oral testimony shews that the barn of Rotier was on the lot (A)—Cerre's grant being bounded on the south by Vine street. The testimony fixes the grant and confirmation to Gratiot under Rotier, as the lot (A), bounded east by Third street, north by Vine, and south by a line 60 feet distant from Vine street; and the lot of the plaintiff, assignee of Chouteau, assignee of Chancellier, as adjoining it on the south, so that the true boundaries of the plaintiff's lot, as possessed by all prior claimants, as conveyed and confirmed to the plaintiff, includes no part of the premises in dispute; so that the recovery below is for land never purchased by or granted to the plaintiff, and his only pretence of title to that lot is the unapproved survey of a deputy surveyor; and the facts so appearing, a new trial ought to have been awarded, the verdict being manifestly against law and evidence.

## H. R. GAMBLE, *for Defendant in error, insists:*

1. That there is no evidence in the record that McNair or Chauvin, or any other person, ever claimed the lot in question against the claims of the plaintiff, (Papin.)

2. That without some evidence that Chauvin or McNair, or some other person, claimed the lot as against the plaintiff, (Papin) the question as to the proper location of the plaintiff's confirmation is a question between the plaintiff and the United States, and the defendant, Boyce, as a stranger to the title and an intruder upon the land, has nothing to say about that question. Hunter vs. Hemphill, 6 Mo. R., 106; Macklot vs. Dubreuil, 9 Mo. R., 477.

3 That the language of the Recorder in his report to Congress is adopted by the United States in the act of 29th April, 1816, which confirms the claims embraced in that report, and therefore, when Congress declares a lot "granted according to the possession of Chouteau, to be surveyed," the ascertainment of the proper location according to Chouteau's possession is expressly referred to the surveyor, and when he takes the evidence and satisfies himself so as to make the location, the claimant is not bound (in an action of ejectment where no opposing title is set up) to go back beyond the location and exhibit the evidence of where Chouteau's possession was. Macklot vs. Dubreuil, 9 Mo. R. Nor is a stranger who shows no title in himself, nor in any other person, at liberty to question the location.

4. It was slightly argued below, that as to all town lots that might be thought vacant, there was always an outstanding title in the board of public schools, but this is easily shown to be fallacious.

The act of 13th June, 1812, *reserves* vacant lots for the use of schools; and the act of 26th May,

1824, directs how they are to be assigned; but the reservation constitutes no legal title. Hammond vs. the Public Schools. Nor does the act of 1831, 4 Story, give a legal title until there is an assignment by the Surveyor under the direction of the Commissioner of the General Land Office. Here no such assignment exists.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of ejectment by Papin against Boyce to recover a lot of ground in St. Louis. The suit originated in the Circuit Court of St. Louis county, but was transferred to the Court of Common Pleas, where a trial was had, resulting in a verdict and judgment for the plaintiff, Papin.

The plaintiff's title was based upon a confirmation by the Recorder of Land Titles, by virtue of the act of Congress of 29th April, 1816.— This confirmation (as it may be termed since the act of 1816 approved it) is in a tabular form, and purports to be of a barn lot in St. Louis, claimed by reason of a possession prior to 1803, by Peter Papin under P. Chouteau, and granted according to possession of Chouteau, and to be surveyed. The plaintiff also gave in evidence a survey of this confirmation, made under the authority of the U. S. Surveyor General for Illinois and Missouri, by which it appears that the claim is located in block 89, and is bounded on the north by a lot of the same dimensions, claimed by Gratiot under Rotier, east by Third street, south by a lot of McNair's, under Chauvin, being sixty feet fronting on Third street, running 120 feet in depth. The plaintiff then proved that defendant was in possession of this lot at the commencement of this suit.

The defendant gave in evidence two surveys made by order of the Court of Common Pleas. The one made by Eiler, deputy U. S. Surveyor, divided the block 89 into three lots, thus:—

Vine street.

J. Papin, under Hervieux; and Gratiot, under Rotier.

P. Papin, under Chouteau.

McNair, under Chauvin.

Third street.

Locust street.

Making the claim of Joseph Papin under Hervieux, and Gratiot under Madame Rotier or Roquier, to cover the same piece of ground, and making the lot of McNair under Chauvin to embrace 120 feet front on Third street.

The survey by Smith, county surveyor, following that of DeWard, (the U. S. deputy Surveyor) divided the block into four lots, thus :—

The object of the remaining portion of the defendant's evidence was to show that the survey by Eiler was correct, and that lots of J. Papin under J. B. Hervieux, and Gratiot under Rotier, conflicted with each other, and that the lot of plaintiff, under Chouteau, who was assignee of Chancellier, was the lot immediately south of the Hervieux or Rotier lot, (supposed to be identical) consequently some *sixty-four feet north of* where the plaintiff claims it to be and where De Ward's survey places it, and not covering any of the ground occupied by the defendant.

For this purpose, the defendant produced sundry documents showing the titles of Hervieux, Rotier and Chancellier:

1. A concession was made to Hervieux by Piernas, on the 6th August, 1773, of a lot seventy feet square, between the barns of Calvet and Chancellier. In 1808, Joseph Marie Papin claimed this lot as assignee of J. B. Hervieux, before the board of commissioners. In 1810, a survey was ordered, to ascertain whether it conflicted with the claim of Charles Gratiot, under Mad. Rotier. In 1811, it was confirmed under the second section of the act of Congress of 3rd March, 1807.

2. A concession to Genevieve Roquier, widow of Louis Bissinett, of 60 by 150 feet on the hill west of St. Louis, adjoining the barn of Cerre on the one side, and that of Chouteau *Cadet* on the other, made on 27th August, 1789. Charles Gratiot, as assignee, claimed this lot before the board in

1808, and in 1811, this claim was confirmed under the second section of the act of 1807.

3. Proceedings of the Recorder upon the claim of Pierre Papin, under Joseph Papin, assignee of P. Chouteau, consisting of conveyances from P. Chouteau to Joseph Papin, and from J. Papin to P. Papin, and a confirmation according to possession.

The defendant also read in evidence the record of a judicial sale of property of Louis Chancellier, by which it appeared that Madame Marie Chancellier, widow of Louis Chancellier, became the purchaser of the barn lot above mentioned; and deeds from Basil Loraque and wife, formerly Marie Louise Chancellier, Louis Chancellier and wife, Pierre Comegys and wife, to the plaintiff, dated St. Charles, 26th October, 1816, conveying to said Papin a lot in the town of St. Louis, on the hill, on which the deceased Louis Chancellier had a barn, bounded (at the date of the deed) on the north by a lot of Joseph Papin, otherwise J. B. Hervieux, on the south by a barn lot of Jacques Chauvin, on the east by Third street, and on the west by the forty arpent lot—which lot belonged to the grantors, as having been purchased by Madame Marie Louise Chancellier, during her widowhood, at a public sale of the property of Louis Chancellier—and is the same lot which Pierre Chouteau gave and granted to Joseph Papin by deed of 16th June, 1809, and which the said Joseph sold to said Pierre Papin, by deed of 1st February, 1811.

The defendant also offered to read to the jury a transcript of the minutes of the Recorder of Land Titles, purporting to contain the evidence taken by him under the act of May 26th, 1824, in relation to the town and village lots. This evidence was excluded, and an exception taken.

The defendant then proved by Pascal Cerre, that he first arrived in St. Louis in 1779, and has resided there ever since; that his father had a barn lot and barn thereon north of block 89; that his father's lot was one arpent square, and extended across Third street; that the barn of Madame Rotier or Roquier was on Third street, near the corner of Vine; that there was another barn south of that belonging to Chancellier, which was burnt down; that Madame Rotier was called Bijon, and sometimes Bijon Bissonette; that her lot was in front of the lot of Hervieux, and Calvet's north of that of witness's father.

Joseph Papin, another witness, testified, that he was born in this country, and is the same who claimed and owned the Hervieux lot, and that of Chancellier; that he built a house on the Hervieux lot, and occupied it several years. He saw Chancellier's barn before it was burnt down and while it was burning—it was a little south of the Hervieux lot.—

The witness got the Hervieux lot from his father, and P. Chouteau, sr., gave him the Chancellier lot. The lots adjoined, as Mr. Chouteau told him, and he enclosed the Chancellier lot and used it as a garden. Madame Bijon's barn was on Third street, a little south of witness's house, which was at the corner of Third and Vine, and the barn of Chancellier was south of that. Chauvin's barn stood where Locust street now is.

Francis Fouche testified that he knew Chancellier's barn—it was about eighty feet south of Papin's cake shop, which was at the corner of Third and Vine.

The defendant also gave in evidence a transcript of the proceedings of the Recorder of Land Titles on the claim of Alexander McNair, showing a notice of claim to four lots, one of them purchased from Jacques Chauvin, bounded on Papin (the plaintiff) northwardly by virtue of inhabitation and cultivation—which, cn the 27th December, 1813, was granted according to the possession of Chauvin.

The plaintiff then gave in evidence survey No. 351, as certified by the Surveyor General, purporting to be a plat and description of a lot confirmed to Alexander McNair, under Jacques Chauvin, representing the lot as fronting on Third street 64 feet, 8 inches, and running back on Locust street 171 feet, 4 inches, and lying immediately south of and adjoining to the lot as claimed by and surveyed for the plaintiff.

At the instance of the plaintiff, the court gave the following instructions to the jury:

1. That there is no evidence before the jury that the lot in controversy, or any part of it, ever was in possession of Chauvin cr Alexander McNair, and that the confirmation to McNair under Chauvin cannot, under the evidence in this cause, be held to include any land north of the lot surveyed by the United States authorities for McNair under that confirmation.

2. That if the jury find from the evidence that the lot surveyed for the plaintiff by the authorities of the United States, under the confirmation in his favor, was in possession of the defendant, Boyce, at the commencement of this suit, the title under the confirmation to McNair is no bar to the plaintiff's right to recover.

3. That the confirmation to plaintiff, and the survey by the United States authorities under that confirmation, are not to be questioned by the defendant on the ground that Chancellier's barn was north of the lot as surveyed.

4. That the confirmation to the plaintiff, and the survey under such confirmation, are prima facie evidence of title in the plaintiff to the lot

in controversy; and the plaintiff is not bound, in support of such title, to shew where Chouteau or Chancellier were in possession, nor can the defendant in this case resist the title of the plaintiff to the lot in controversy, unless he has shown title in some other individual which actually covers the lot in controversy.

The defendant asked the following instructions, which were refused:

1. The grant or confirmation by the Recorder of Land Titles to the plaintiff, vests a title to the lot which it shall appear to the satisfaction of the jury was possessed by Pierre Chouteau.

2. The survey given in evidence by the plaintiff is not conclusive of the true location of the lot granted or confirmed to the plaintiff, and if it appears to the satisfaction of the jury that the lot granted or confirmed to the plaintiff is north of the lot in dispute, the verdict ought to be in favor of the defendant.

3. The fact, if it appear to the jury that the grant to Gratiot and the lot granted to the plaintiff cover the same ground, does not authorize the location of the grant to the plaintiff at a different place.

4. The grant or confirmation to the plaintiff is for the same lot which was claimed by Pierre Chouteau under Louis Chancellier, and the true location of that lot includes the barn of Chancellier.

5. The claim of the plaintiff, and the deeds exhibited by him to the Recorder, are to be taken as part of the description of the lot confirmed.

6. If the jury find that the lot claimed by the plaintiff, under Joseph Papin, assignee of Pierre Chouteau, assignee of Màdame Chancellier, is the same lot confirmed or granted to him by the Recorder of Land Titles, then the true location of said lot ought to be according to the possession of Chancellier, including his barn.

7. If the jury find from the evidence that the lot claimed by and granted to the plaintiff, as possessed by Louis Chancellier and Chouteau and his assignees, prior to the grant by the Recorder, does not include the lot in dispute, or any part thereof, the verdict ought to be for defendant.

8. That the confirmation to McNair is a complete title to the *land* therein described, whether possession be proved or not.

9. That the plaintiff cannot recover any land in possession of Boyce, if assigned to him by the Surveyor General, unless such land was the land confirmed to him by the confirmation.

10. That if the Surveyor General assigned to the plaintiff a lot other and different than the one confirmed to him, plaintiff cannot recover.

The defendant moved for a new trial, which was refused.

The record presents but a single question, and that is, whether the de-

fendant, under the circumstances of the case, could dispute the correctness of the survey made by the United States Surveyor of the lot confirmed to the plaintiff by the act of 1816. This was denied to the defendant by the instructions given by the Court of Common Pleas.

The defendant set up no title in himself to the premises in dispute, nor did he attempt to show a title in any other, except the United States.— The confirmation to McNair under Chauvin was as indefinite as that to the plaintiff, and no evidence was given by the defendant to show its locality. The only evidence on that point was the survey given in evidence by the plaintiff, and that survey located McNair's lot so as not to conflict with the lot in dispute. All the defendant's testimony was designed to show that the plaintiff's confirmation was improperly located by the United States survey, and that the possession of Chouteau (upon which the confirmation was based) was at another and different part of the block from that where the public surveyor had placed it.

The defendant, it will be observed, did not dispute the confirmation. This was conceded, and it is very clear that, occupying the position he did, he could not, upon the principles settled by this court in Macklot vs. Dubreuil and several previous cases, be permitted to take advantage of any irregularities which may have occurred in the emanation and completion of the plaintiff's title. The instructions of the Court of Common Pleas, however, went a step farther than the position of this court in the cases referred to, and held the defendant to be concluded by the *location* of this title authoritatively made by the officers of the Federal Government.

It is too late to question the right of the Recorder who succeeded the first Board of Commissioners to act upon village lots as well as upon tracts of land submitted to him for confirmation. Numbers of town lots in St. Louis, supposed to be confirmed by the act of 13th June, 1812, were claimed before the Recorder and reported by him to Congress for confirmation. Whether the Recorder transcended his powers is of no consequence, as the subsequent sanction of the Government imparted unquestionable validity to his acts; and these confirmations of town lots under the act of 1816, are evidences of title to those who choose to avail themselves of them, in preference to relying on the first section of the act of 1812. There can be no greater objections to them than would apply to the certificates of the Recorder under the act of 1824, which have been held *prima facie* evidence of title.

The confirmation does not determine the locality of the lot. In this instance, the lot confirmed was a barn lot on the hill in St. Louis, and

was to be surveyed according to the possession of Chouteau. The usual size of these lots was 60 by 120 feet, and the possession of Chouteau was to determine its position. The general principles applicable to surveys, as stated by the counsel for the plaintiff in error, are unquestionably correct. The Surveyor is not a judicial officer, by whom the question of locality is to be definitively settled, although it is a matter of fact to be investigated by him in the execution of his survey. His survey cannot therefore be generally conclusive of locality, because it belongs only to a judicial tribunal to determine the locality of title, after that title has emanated from the United States. It is *prima facie* evidence of locality, because it is the act of an officer entrusted by law with the performance of this work. There are cases in which the survey becomes the principal title paper, and cannot be disputed, as where the confirmation is upon a survey alone; but this class of cases has no connexion with the present.

Conceding the general principle as above stated, it is insisted on behalf of the plaintiff, that the propriety of this survey is a question between the United States and himself, with which this defendant cannot interfere, and in which he has no interest; that the ascertainment of Chouteau's possession is expressly referred to the Surveyor General, by the act of 1824, and when the evidence is taken and the surveyor is satisfied, a stranger, who shows no title in himself or in another, should not be permitted to question its correctness.

To this reasoning, I confess myself unable to see any valid objection. The United States, as a great landed proprietor, has necessarily to dispose of her lands through the agency of officers appointed for that purpose. In attempting to carry out in good faith the treaty made with France, every disposition has been shown on the part of this government to do justice to the former inhabitants, and afford them every facility for acquiring complete title to their possessions. From the peculiar character of the laws and customs under which these inchoate titles originated, great difficulties had to be encountered by the officers to whom this subject was entrusted. To ascertain the locality of a barn lot, in 1842, depending upon a possession prior to 1804, where, perhaps, a barn has not stood for thirty or forty years, is a matter depending upon the fleeting memory of witnesses, and where the position of the barn a few feet north or south may vary the position of the lot. The agent of the United States has, in this instance, located the lot to the satisfaction of the claimant. Why should a stranger be permitted to question its propriety?

*Cui bono ?*   The proof offered would only show the lot vacant, or, in other words, would show that the title to it was still in the United States. But the proprietor has disclaimed title by the acts of its agent, and recognized the title of the plaintiff, at the place designated. No one is injured by this mistake, if mistake it proves to be. We see no impropriety, therefore, in extending the doctrine held by this Court in Hunter vs. Hemphill, and in Macklot vs. Dubreuil, to a case like the present.

But it has been suggested in argument, that there is an outstanding title to all the vacant lots in St. Louis in the public schools; and if this be so, there can be no doubt that this corporation will not be concluded by this survey. No instruction was asked from or given by the court below on this point, and no evidence was offered touching the title of the public schools to this lot. But we are called upon to take judicial notice that, after the passage of the act of Congress of June 27th, 1831, the legal title to all the lots in St. Louis, not belonging to private individuals, was vested in the board of public schools.

I am not prepared to say that the legal title to *all the vacant lots* in St. Louis was vested in the public schools by the act of 1831. That the act of 1831 vested in the public schools the legal title to all the lots, affected by that law, may be admitted. It was determined in the case of Hammond vs. the Public Schools, that the act of 1812 was only a reservation. The act of 1824 then declared it to be the duty of the Surveyor General to proceed, under the direction of the Commissioner of the General Land Offie, to *survey, designate, and set apart* the school lots, taking care to except such as the President might reserve for military purposes, and that the whole quantity of the lots so set apart should not exceed one-twentieth of the land included in the general survey of the town. The act of 1831 relinquishes the title of the United States to the lots reserved by the act of 1812. But until the Surveyor General has surveyed, designated, and set apart the lots, how are we to ascertain upon what the act of 1831 operates ? We cannot know judicially that all the vacant lots in St. Louis will not exceed one-twentieth of the land embraced in the survey of the town. When the surveyor has acted and set apart the lots, it may be that any intermediate title springing up after the passage of the act of 1831, and before the location by the surveyor, would be avoided, and in this way, that the title of the public schools would take date from the passage of the act of 1831, and not from the time of the location by the surveyor. But no question of this sort arises here. Nothing appears on the record to show that the lot in controversy

has been set apart to the public schools, and therefore nothing can be determined in relation to their title.

Judge McBRIDE concurring, the judgment is affirmed.

SCOTT, J., dissents.